## In re WILLIAMS.

### No. 2580.

District Court, E. D. Virginia, Norfolk Division.

Dec. 6, 1935.

Skinner & Marshall, of Newport News, Va., for Schmelz Liquidating Corporation.

S. R. Buxton, of Newport News, Va., for bankrupt.

WAY, District Judge.

After mature consideration of the arguments and authorities submitted by counsel in support of and in opposition to the motion to dismiss the bankrupt's petition for discharge, I have reached the conclusion that the motion should be overruled.

It appears that the bankrupt filed his petition for discharge well within the time prescribed by law; that is to say, he was adjudicated a bankrupt on the 1st day of February, 1921, and filed his petition for discharge on the 8th day of November, 1921. Why the petition was not accompanied by the required costs is not affirmatively shown, but it does appear that the petition was treated as duly filed on November 8, 1921, and so endorsed by the clerk, in conformity with the practice then prevailing in this court.

There was no rule of court then in force, prescribing the diligence with which a bankrupt should prosecute his petition for discharge. On the contrary, it was then the practice for petitions for discharge to lie in the clerk's office until formally presented by counsel in open court, whereas, under the present rules and practice unless a petition for discharge is accompanied by the certificates of the referee and trustee and the required costs, the clerk is not permitted to receive or even to physically lodge such petition in his office, so that under the present practice when a petition for discharge is filed such petition regularly proceeds to

a final hearing without further action by the bankrupt or his counsel, unless specifications of objections to discharge are filed by a party in interest in the manner prescribed by law. This is radically different from the practice prevailing. in 1921 and 1922.

■ Under all the circumstances disclosed, I think it is only fair to conclude that a mistake or misunderstanding occasioned the unusual delay in prosecuting the instant petition for discharge. Furthermore, it appears from the records that numerous other petitions were allowed to drag along in much the same way and for many years, as the petition in question, and that in a number of those cases the court heretofore allowed the bankrupts to pay the costs and prosecute the petitions to a conclusion notwithstanding the great delay.

■ Reference is made in the brief of counsel and in the motion to the rule of the court adopted on January 1, 1928, and to the general order adopted by this court June 15, 1934, effective July 1, 1934, and to a supplementary order of the court extending to September 10, 1934, the time within which certain classes of bankrupts could take the remaining steps to prosecute their petitions for discharge to final conclusion. While those orders, particularly the orders of 1934, were intended to be drastic and to finally put an end to unnecessary delays in the prosecution of bankruptcy proceedings, I still doubt that it would be equitable or just under the circumstances to apply them in the instant case and grant the motion which is now presented to the court, since I am unable to find anything that will justify the conclusion that the rule referred to, adopted by Judge Groner, and which became effective January 1, 1928, was intended to be retroactive so as to apply to petitions filed six or seven years before its adoption. On the contrary, it is manifest, I think, that this rule was intended to govern and apply to petitions filed or sought to be filed on and after January 1, 1928. Furthermore, it appears from the stipulation that the bankrupt was not notified of the order of July 5, 1934, extending to September 10, 1934, the time within which bankrupts who had therefore filed petitions for discharge unaccompanied by the necessary costs or recommendations, could pay such costs and file the required recommendations.

■ In reaching this conclusion the court is influenced by the fact that the assignors or predecessors in title of the claim of the creditor which now complains have been equally guilty of laches. It appears from the record that the original owner of the claim held by the objecting creditor proved its claim in the bankruptcy proceedings and received a dividend upon that claim in 1921; that the real estate now owned by the bankrupt and which the objecting creditor undoubtedly intends to subject to its judgment in the event the court grants the pending motion, was surrendered by the bankrupt and sold in the bankruptcy proceedings and that a substantial part of the funds distributed to creditors was realized from that real estate. It further appears that the objecting creditor and its predecessors have stood by for fourteen years with full knowledge, or at least with ample opportunity to have full knowledge of the bankrupt's delay in prosecuting his petition for discharge, without ever raising any objection to the delay or taking any action whatever upon their judgment or otherwise, until after the delay had come to the attention of the bankrupt and he had paid the costs incident to obtaining a discharge. During that period this creditor had stood by and seen the bankrupt rehabilitate himself and get a new start in life.

■ In that connection, mention was made in the oral argument and in the stipulation of fact that the purchaser at the sale of the real estate (1921) shortly thereafter reconveyed it to the bankrupt. But that fact was well known to the original creditor or should have been known to it at or about the time the transaction occurred yet it never made any claim whatever that the bankrupt had not honestly surrendered all of his estate to the trustee in bankruptcy or that he was guilty of any misconduct, fraud, concealment, or any act of omission or commission in the bankruptcy proceedings that could prejudice his right to a discharge.

It further appears from the papers in the bankruptcy proceedings that this real estate to which reference has just been made brought at the public sale thereof in 1921 a price substantially in excess of its appraised value and that Judge Waddill approved and confirmed the sale, no objection thereto having been made by any creditor.

■ As I view the matter, it amounts to this: While the bankrupt apparently has been guilty of gross laches in the prosecution of his petition for discharge, the objecting creditor and its predecessors in title have been equally guilty. No creditor or party in interest is shown or even alleged

to have been prejudiced by the great delay as occurred in some of the cases relied on by the objecting creditor. To refuse the order of dismissal will not deprive the creditor of any right to which it is in equity and good conscience entitled, while to grant the motion will but permit it to obtain a great advantage as the direct result of its own prolonged silence and inaction.

I think the principal case, Lindeke et al. v. Converse (C.C.A.8) 198 F. 618, cited and relied on in the brief of counsel for the objecting creditors is distinguishable on substantial grounds. In that case the delay of the bankrupt in prosecuting her petition for discharge operated to the prejudice of the creditors who intended to object to his discharge. It appeared that the creditors were prepared to oppose a discharge on the ground that the bankrupt with intent to conceal her true financial condition, had failed to keep books of account from which the same could have been ascertained, that she had with intent to defraud her creditors transferred and concealed part of her property and had failed to answer material questions approved by the court and that as a result of the delay the objecting creditors were unable to produce evidence upon which they relied to substantiate their charges. In fact the bankrupt made no denial that material evidence upon the issues raised had been lost by the delay or that the purpose of the delay had been to cause the loss of evidence.

But no such situation is presented in the instant case. The enormity of the delay is apparent but it is also apparent that its beginning must have resulted purely from unintentional oversight or a misunderstanding and that the bankrupt was free of any wrongdoing or intention to gain any advantage over any one as a result of the delay.